UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CHRISTIAN REYES,<br><br>　　　　　　　　　　Defendant. | Case No.: 24-cr-01992-JES<br><br>**ORDER GRANTING MOTION TO SUPPRESS EVIDENCE**<br><br>[ECF No. 22] |

　　　Pending before the Court is Defendant Christian Reyes' motion to suppress. ECF No. 22. The United States filed an opposition to the motion. ECF No. 25. Defendant filed a reply. ECF No. 28. The Court held an evidentiary hearing on December 9, 2024. ECF No. 30. For the reasons discussed below, Defendant's motion is **GRANTED**.

## I. BACKGROUND[1]

On August 12, 2024, at approximately 6:30 p.m., El Centro Police Department Officers Tavarez ("Ofc. Tavarez") and Garcia ("Ofc. Garcia") (collectively "Officers") were in full uniform and in a marked patrol car in the 400 block of State Street, in the city of El Centro, California. They were near the El Centro Liquor store, which was on the corner of Fourth and State Street. Ofc. Garcia previously patrolled this area during his eight years working as a police officer for the El Centro Police Department and parts of ten years working with the Imperial County Sheriff's Department. During that time, he has made from 200-300 arrests in the two-block area near the liquor store. Those arrests have included warrant arrests, arrests for assault with deadly weapons, possession of controlled substances for both personal use and for sales. He has also responded to the area for fights and arrested people for unlawful possession of firearms. Prior to August 12, 2024, his last arrest in that area was in February or March of 2024, where he arrested someone with unlawfully possessing a firearm. His most recent drug arrest near the El Centro Liquor store was a few months prior, for possession of personal use.

While in his patrol car, Ofc. Garcia observed Defendant and another male make hand-to-hand contact with each other's left hand connecting together as if they were exchanging drugs and/or money. Ofc. Garcia did not see either drugs or money in anyone's hand. When Defendant saw the Officers, he immediately turned around and when the patrol car approached the parking lot of the liquor store, Defendant began to walk away from the male while the other male stayed near the liquor store and never left or fled from Officers. Officers did not contact the other male throughout this incident or afterwards. Defendant says that he is familiar with the area near El Centro Liquor store, as his brother lives a few

---

[1] The following facts are taken from the evidence presented at the evidentiary hearing on December 9, 2024, including the testimony of El Centro Police Officer Fernando Garcia, which the Court finds completely credible; as well as dash cam video from the patrol vehicle, attached as Exhibit A to the motion to suppress; body worn camera video from Ofc. Garcia, attached as Exhibit D to the motion to suppress; body worn camera video from Ofc. Tavarez, attached as Exhibit 1 to the United States' opposition; and Defendant's declaration, attached as Exhibit E.

blocks away, and while leaving the store, he saw two individuals he knew from the neighborhood and shook hands to say hello with one of the individuals.

Then, the Officers drove into the parking lot near the liquor store to contact Defendant. Defendant appeared to acknowledge the Officers as they pulled into the parking lot and when Ofc. Garcia asked Defendant if he could talk to him, Defendant pointed to himself as if to say, "me?" Defendant then took a few more steps then stopped and turned to face the officers with his arms spread open as if to say, "what's going on?" Ofc. Tavarez got out of the vehicle and asked if the officers could talk to Defendant, and he responded "no." Defendant continued walking away and then ran (or fast walked) across the street. Once across the street, Defendant initially walked at a normal pace.

Officers then got into their patrol car, activated their lights and siren, and pursued Defendant. After Officers began pursuing him, Defendant started running away from the officers. After a block and a half, Officers caught up to Defendant, tackled Defendant to the ground, and arrested him for resisting and obstructing an Officer. Defendant did not initially put his hands behind his back as ordered by Officers. However, Officers were able to eventually secure Defendant in handcuffs and while sitting Defendant up, a revolver fell from his right shorts pant leg. The gun was later identified as a .357 Astra revolver (bearing serial number 159353) loaded with one round of ammunition. When asked why he arrested Defendant, Ofc. Garcia testified that he arrested Defendant for the firearm, but it was more like resisting and obstructing the officers from completing their duties as they were just trying to talk to him, and he ran away when they tried to stop him and Defendant refused to talk.

After discovery of the firearm, Defendant was arrested for unlawfully possessing a firearm. Defendant is charged in an Indictment with being a previously convicted felon, knowingly and unlawfully in possession of a firearm; in violation of 18 U.S.C. § 922.

## II.   LEGAL STANDARD

The Fourth Amendment "applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Brignoni-Ponce*,

422 U.S. 873, 878 (1975). "An officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). "[R]easonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for *particularized* suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000). Reasonable suspicion must be based on "more than an inchoate and unparticularized suspicion or hunch." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1981). Courts look at the totality of the circumstances to determine whether an officer reasonably suspected criminal activity. *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

### III.  DISCUSSION

The United States argues, and the Court agrees that the officer's initial contact with Defendant was not a seizure. "For purposes of the Fourth Amendment, a seizure occurs when an officer, through some form of physical force or show of authority, restrains the liberty of a citizen" such that "a reasonable person would have believed that he was not free to leave." *United States v. Summers*, 268 F.3d 683, 686 (9th Cir. 2001) (citation omitted). Here, the officers approached Defendant, in uniform and in a marked patrol vehicle and asked Defendant if they could speak with him. Defendant looked up at the officers, pointed to himself and slowly walked away, then ran across the street and resumed a normal pace walk down the street. At that point, Defendant was under no obligation to talk to the officers. Defendant was not seized during this initial contact.

However, the Court finds that Defendant was seized when officers pursued and later, tackled, handcuffed and immediately arrested Defendant for obstructing an officer. Defendant was immediately arrested for not following the officer's command to stop and speak with them. As discussed below, the Officers had reasonable suspicion to conduct an

investigatory stop of Defendant after he fled the Officers, but they did not conduct an investigatory stop, they immediately arrested Defendant.

The Officers lacked reasonable suspicion to seize Defendant. First, the United States argues that the Officers observed a possible hand-to-hand drug transaction in a high crime area. Looking at the facts available to officers, Ofc. Garcia observed Defendant in an area he knew generally for high crime and drug activity, making a hand-to-hand drug transaction. Ofc. Garcia's last drug arrest in the area was either over three years prior or several months prior, it is unclear from his testimony. There was no evidence submitted regarding the amount or frequency of drug arrests in the area or whether the liquor store was a location known for drug trafficking. There was very little information offered to support the argument this was an area known for high drug activity. Further, the other individual involved in the purported hand-to-hand transaction did not flee when Officers approached and was never contacted by Officers. Based on their observations, Officers had nothing more than a hunch that a crime was committed as two men touching hands in a high crime area generally inculpates too much innocent behavior. *See United States v. Kitchen*, 11 Fed. App'x. 844, 846 (9th Cir. 2001).

The United States cites *Pitts* to argue Officers had reasonable suspicion based on a totality of the circumstances despite the fact that no officer observed money or drugs change hands. *United States v. Pitts*, 338 Fed. App'x 676, 677 (9th Cir. 2009). However, in *Pitts*, the officer was conducting surveillance in an alley known for a high volume of illegal narcotics activity and observed *Pitts* in two or more hand-to-hand contacts with passers-by.

Here, Ofc. Garcia testified that the two block radius near the liquor store was a high crime area generally. Ofc. Garcia initially testified that his last arrest in the area was in February or March of 2024, for possession of a firearm and his last arrest related to illegal narcotic activity was a few months prior. Ofc. Garcia's testimony about the area near the liquor store being a high crime area appeared to be based on his subjective impression, since it was solely based on the number of arrests he had made in the area. Additionally,

Ofc. Garcia did not discuss the number of arrests for illegal narcotic activity and whether the liquor store was known by law enforcement for drug trafficking. An officer's "subjective impression of the character of the neighborhood" does not support a reasonable suspicion of wrongdoing unless it is "supported by objective indicia of frequent criminal activity that one would expect to find in such an area." *United States v. Conerly*, 75 F.Supp.3d 1154, 1165 (N.D. Cal. 2014).

Second, the United States argues that Defendant's flight combined with the officers' observations gave them reasonable suspicion to stop Defendant and conduct an investigatory stop. The Court agrees. "[U]nprovoked flight is simply not a mere refusal to cooperate … [a]llowing officers confronted with such flight to stop the fugitive and investigate further." *Illinois v. Wardlow*, 528 U.S. 119, 124-125 (2000). Officers are allowed to conduct a *Terry* stop in such situations as it is a far more minimal intrusion that "simply allow[s] the officer to briefly investigate further," and "[i]f the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way." *Wardlow*, 528 U.S. at 126. Defendant's flight from officers combined with their observations justified a *Terry* stop. However, officers did not conduct a *Terry* stop, rather they immediately tackled Defendant, handcuffed him and arrested him for obstruction. Ofc. Garcia testified that Defendant was resisting and obstructing officers by refusing to talk to them as they were trying to investigate what had just occurred in the parking lot of the liquor store. When Officers finally caught Defendant, they arrested him for resisting and obstructing.

Defendant cites *Kitchen* to argue it's instructive holding to the facts in this case. In *United States v. Kitchen*, 11 Fed. App'x 844 (9th Cir. 2001), officers were patrolling a high crime neighborhood at night and pulled their patrol car into the parking lot of a gas station/deli and saw Kitchen and another man in the parking lot make hand-to-hand contact, but did not see whether the men exchanged anything. *Id*. at 845-846. When Kitchen and the other man saw the patrol car, they turned away from each other, placed their hands in their pockets, and walked away in separate directions. *Id*. at 846. As Kitchen walked away,

he walked at a normal pace but looked over his shoulder in the direction of the officers several times. *Id*. The officers then stopped and questioned Kitchen about the transaction in the parking lot. *Id*. The Ninth Circuit found that officers lacked reasonable suspicion for an investigatory stop, because under the circumstances, "a finding of reasonable suspicion inculpates too much innocent behavior." *Id*. Kitchen initially consented to the initial stop and frisk, but during the frisk, as officers approached his pocket, Kitchen left and ran away and the Court found that "[h]is subsequent flight, however, justified a *Terry* stop." *Id*. at 846-847. However, when officers pursued Kitchen, they did not conduct a mere investigatory detention; rather, they immediately handcuffed Kitchen and told him he was under arrest for obstruction and later found a gun on his person. *Id*. The Court held that the officers lacked probable cause for Kitchen's arrest and that the subsequent search of Kitchen was unlawful. *Id*.

Here, as in *Kitchen*, officers immediately tackled and arrested Defendant after his flight from officers. At that point, Officers lacked probable cause to arrest Defendant and the subsequent recovery of the firearm from Defendant was unlawful. Although the firearm fell out of Defendant's shorts, officers did not discover the firearm until after placing Defendant under arrest for obstruction. The Court finds that it is clear from Ofc. Garcia's testimony, that the decision was made to arrest Defendant for resisting and obstructing a police officer when Defendant was tackled to the ground, prior to discovery of the firearm. At that point, Officers at most had reasonable suspicion to detain Defendant to conduct a *Terry* stop for the possible narcotic activity they observed earlier.

In sum, the officers lacked reasonable suspicion when seizing Defendant. The evidence found on Defendant's person must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963) ("The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion.").

/ / /

/ / /

/ / /

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to suppress is **GRANTED**. The evidence obtained from Defendant's person is suppressed.

**IT IS SO ORDERED**.

Dated: January 22, 2025

_____
Honorable James E. Simmons Jr.
United States District Judge